**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ALBERT MCCARTHY,                    :       CIVIL ACTION
                                    :
            Plaintiff,              :
      v.                            :
                                    :
JEFFREY S. DARMAN, et al.,          :       No. 07-CV-3958
                                    :
            Defendants.             :


## MEMORANDUM AND ORDER

**JOYNER, J.**                                    **June 24, 2009**

      Presently before the Court is Plaintiff's Motion for Partial
Summary Judgment on the issue of Defendants' liability under 42
U.S.C. § 1983, Responses thereto, Defendants' Motion for Summary
Judgment and Responses thereto.  For the reasons set forth below,
Defendants' Motion is granted as to all federal claims.
Plaintiff's Motion is denied.  The Court declines to exercise
supplemental jurisdiction over the remaining state claims and
thus the state claims are dismissed with leave to Plaintiff to
re-file them in state court.

## BACKGROUND

      This case arises out of a dispute between the Defendants and
the Plaintiff regarding Plaintiff's former position as Chief of
Police of the Borough of Kennett Square ("the Borough").  On June
7, 2007, Plaintiff, who at the time was Chief of Police of the
Borough of Kennett Square, submitted to one of the Defendants,

David Fiorenza ("Fiorenza"), Borough Manager, a letter entitled "Letter of Intent to Retire" and stating six "Proposed Terms and Conditions."[1]  (Pl.'s Mot. Partial Summ. J. Ex. N.)  On June 15, 2007, Plaintiff emailed Mayor Leon Spencer and told the Mayor to publicize Plaintiff's retirement, effective July 31, 2007, at the following week's council meeting.  The email stated that "it would be a good idea for [the Mayor] to appoint L[t.] Z[unino] as acting Chief . . ." and that Plaintiff had given the story to a reporter for the following week's paper.  (Def.'s Mot. Summ. J. Ex. F.)

Prior to and after submitting this letter to Fiorenza, Plaintiff and the Township of Kennett Square (the "Township") had discussed the possibility of Plaintiff becoming Chief of Police for the Township's newly created police department.  On June 18, 2007, Plaintiff signed an employment contract with the Township that stated, *inter alia*, that he was to be employed by the Township as a full-time Chief of Police in its police department beginning August 1, 2007, for a period of two years.[2]  (Def.'s Mot. Summ. J. Ex. I.)

---

[1] Plaintiff later withdrew two of these.

[2] On August 2, 2007, the Board of Supervisors for Kennett Township amended Plaintiff's employment agreement.  The amendment stated that Plaintiff's employment with Kennett Township would not commence before his employment as Chief in Kennett Square was terminated.  (Def.'s Mot. Summ. J. Ex. P.)  Defendants assert that Plaintiff never informed them of this amendment prior to discovery in this case.  Plaintiff did not refute this assertion.

On July 26, 2007, Fiorenza submitted a letter to Plaintiff with the subject line "Employment Status."  The letter stated that "the Borough accepts your retirement effective July 31, 2007" and would "process [Plaintiff's] separation date as of July 31, 2007."  (Def.'s Mot. Summ. J. Ex. L.)  The letter informed Plaintiff that the Borough understood that Plaintiff was taking a position as Chief of Police with Kennett Township starting August 1, 2007, and had signed an employment contract to that effect on or about June 18, 2007.  It also stated the Borough's intent to name Lt. Zunino as acting Police Chief effective August 1, 2007. The letter further stated that Plaintiff's "Kennett Square Borough position must be [his] primary employment up to and including [his] date of separation on July 31, 2007," that he was not permitted to hold two full-time jobs simultaneously, and that "[f]ailure to adhere to this standard may lead to the imposition of discipline."  (Def.'s Mot. Summ. J. Ex. L.)  Additionally, the letter responded to, *inter alia*, Plaintiff's request for an amendment to his pension plan and discussed the vacation, holiday and personal pay, and compensation time to which the Borough determined Plaintiff was entitled.

On July 30, 2007, the Plaintiff submitted to Fiorenza a letter stating, *inter alia*, that he did "not intend to retire at any time in the near future."  (Pl.'s Mot. Partial Summ. J. Ex. O.)  In response, at a special meeting of the Borough Council

3

("the Council") on August 6, 2007, the Council voted to suspend the Plaintiff with pay.  The Council further directed the Solicitor's office "to immediately investigate such further appropriate action which may be warranted including termination, suspension without pay or other disciplinary actions as provided by law."  (Pl. M. Partial Sum. J. Ex. U.)  A letter of the same date was sent to Plaintiff stating, *inter alia*, that he was being placed on "administrative leave with pay, effective immediately" and detailing the terms of the administrative leave.  (Pl.'s Mot. Partial Summ. J. Ex. N.)  Plaintiff responded by letter refusing to accept pay while he was on leave.  (Def.'s Mot. Summ. J. Ex. S.)

On August 9, 2007, Fiorenza sent Plaintiff another letter responding to Plaintiff's prior letter, inquiring as to Plaintiff's employment status with the Township, and ordering Plaintiff to respond to the letter within three business days. (Def.'s Mot. Summ. J. Ex. T.)  Plaintiff did not respond.  On August 22, 2007, Fiorenza sent Plaintiff a letter with the subject line "Loudermill Notice."  This letter notified Plaintiff of the "potential for disciplinary action" against him in relation to certain timesheets and in relation to his failure to respond to the August 9, 2007 letter.  (Def.'s Mot. Summ. J. Ex. U.)  Plaintiff responded by letter dated August 29, 2007. (Def.'s Mot. Summ. J. Ex. V.)

4

On September 14, 2007, Jeff Darman, President of Borough of Kennett Square Council, sent Plaintiff a letter with the subject line "Second Loudermill Notice."  (Def.'s Mot. Summ. J. Ex. W.) This letter stated that Plaintiff "may be subject to disciplinary action" for conduct described in the letter.  In a letter dated September 21, 2007, Plaintiff stated, *inter alia*, that he "reluctantly resigned [his] position as Chief of Police."  (Pl.'s Mot. Partial Summ. J. Ex. W.)

On September 21, 2007, Plaintiff also filed suit in this Court alleging a § 1983 claim based on a deprivation of his procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution and various state claims.  The Plaintiff and the Defendants have now both moved for summary judgment.[3]

## **STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  Material facts are those that may affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[3] Plaintiff's Motion is for partial summary judgment on his § 1983 claims.

party." <u>Anderson</u>, 477 U.S. at 248.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."[4]  <u>Kaucher v. County of Bucks</u>, 456 F.3d 418, 423 (3d Cir. 2006) (quoting <u>Wetzel v. Tucker</u>, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).

In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>See</u> <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000).  However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage.  <u>Anderson</u>, 477 U.S. at 252. "'[A]n inference based on speculation or conjecture

---

[4] Plaintiff in his Motion appears to have misconstrued the standard for summary judgment.  Plaintiff states that he can meet his burden on summary judgment on the issue of liability by pointing to a lack of evidence by the defendants.  However, the "moving party meets its burden under Rule 56 by '. . . 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.' *Celotex v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554," (Pl.'s M. to Dismiss at 9), only where the nonmoving party bears the burden of persuasion.  <u>See</u> <u>Kaucher</u>, 456 F.3d at 423.  Here, Plaintiff bears the burden of persuasion on the issue of liability under § 1983.  Thus, Plaintiff cannot meet his burden here by pointing to a lack of evidence by the Defendants.

does not create a material factual dispute sufficient to defeat entry of summary judgment.'" *Koltonuk v. Borough of Laureldale,* 443 F. Supp. 2d 685, 691 (E.D. Pa. 2006) (quoting *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

## DISCUSSION

**A.   Section 1983 Claims**

Pursuant to §1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2000).  The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).  Section 1983 is thus not itself a source of substantive rights but rather provides a cause of action for the vindication of federal rights. *Rinker v. Sipler,* 264 F.Supp.2d 181, 186 (M.D.Pa. 2003) (citing *Graham v. Connor,* 490 U.S. 386, 393-394 (1989)).

To make out a claim under §1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it

operated to deny him a right or rights secured by the
Constitution or laws of the United States.  Gomez v. Toledo, 446
U.S. 635, 640 (1980); Sameric Corp. v. City of Philadelphia, 142
F.3d 582, 590 (3d Cir. 1998); Moore v. Tartler, 986 F.2d 682, 686
(3d Cir. 1993).

## 1.  Substantive Due Process Claim

Plaintiff alleges that Defendants violated Plaintiff's right
to substantive due process under the Fourteenth Amendment to the
United States Constitution by depriving him of his property
interest in his position as Chief of Police of Kennett Square and
of his liberty interest in his good name and reputation. (Pl.
Compl. ¶ 141, 153-155, 162.)

The Due Process Clause of the Fourteenth Amendment provides
that no state shall "deprive any person of life, liberty, or
property, without due process of law."  At the core of due
process is the protection against arbitrary governmental action,
both procedurally and substantively.  Boyanowski v. Capital Area
Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000).  Substantive
due process limits what governments may do regardless of the
procedures employed and applies to government conduct in both
legislative and executive capacities.  Id.; see also Nicholas v.
Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000)(stating fabric
of substantive due process includes two threads--legislative acts
and non-legislative state action).

"To prevail on a non-legislative [*i.e.* executive] substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process applies.'" Nicholas, 227 F.3d at 139-40 (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000)).  Contrary to property interests for purposes of procedural due process, property interests for purposes of substantive due process are protected only if they are "fundamental" under the United States Constitution.  See Hill v. Borough of Kutztown, 455 F.3d 225, 235 n.12 (3d Cir. 2006); Nicholas, 227 F.3d at 140.

Plaintiff asserts that he has a property right in his office as Chief of Police and that this property right is fundamental under the United States Constitution.  (Pl. Compl. ¶ 141, 153, 154.)  Plaintiff also asserts that he has a protected liberty interest in his good name and reputation that is entitled to substantive due process.  (Id. ¶ 162.)  The Third Circuit, however, has explicitly held that public employment is not a fundamental right entitled to substantive due process protection. Hill, 455 F.3d at 235 n.12; Koltonuk v. Borough of Laureldale, 433 F. Supp. 2d 685, 692 n.4 (E.D. Pa. 2006); see, e.g., Nicholas, 227 F.3d at 142 (holding tenured public employment is not a fundamental property interest entitled to substantive due process protection).  Nor is a person's interest in his or her

9

reputation.  See Hill, 455 F.3d at 235 n. 12 (finding substantive due process claim based on reputational injury that decreased plaintiff's ability to earn a living necessarily failed).  Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claims is, therefore, granted.  Plaintiff's Motion for Partial Summary Judgment on his substantive due process claims is denied.

### 2.  Procedural Due Process Claim

To establish a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must prove "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law."  Hill, 455 F.3d at 233-34 (internal quotation omitted).

Where the deprivation of a protected interest is found, whether the procedures provided satisfy due process is determined by analyzing the private and governmental interests at stake.  Mathews v. Eldridge, 424 U.S. 319, 334 (1976).  Due process is not "a technical conception with a fixed content unrelated to time, place and circumstances," but instead is "flexible and calls for such procedural protections as the particular situation demands."  Id. (internal quotations omitted).  Thus, to determine the requisite process due in a given situation requires

10

consideration of three distinct factors: (1) the private interest the official action will affect; (2) the risk of an erroneous deprivation of such interest and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the burdens additional or substitute procedures would entail.  Id. At 334-45.

Generally, due process requires an opportunity for some kind of hearing appropriate under the circumstances prior to the deprivation of a significant property interest.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  However, there are also situations in which a pre-deprivation hearing is not necessary and a post-deprivation hearing will suffice.  Id. at 542 n.7; see Gilbert v. Homar, 520 U.S. 924, 930 (1997) (noting Court has rejected proposition that due process always requires predeprivation process).

Plaintiff advances two procedural due process claims: (1) a property-based procedural due process claim, arguing that he was deprived due process when the Borough Council suspended him with pay [5] and (2) a stigma-plus claim, arguing that certain defendants defamed him in relation to the suspension and thus deprived him of his liberty interest in his reputation.

_____

[5] Although we note that the parties disagree as to whether the Plaintiff was "suspended" or "placed on administrative leave," this argument is mere semantics.  Plaintiff was temporarily relieved of his duties and ordered not to report to work.  Thus, his duties were suspended, regardless of whether it was for administrative or disciplinary reasons.

### a. Employment as Chief of Police

To have a property interest in a job, a person must have a legitimate entitlement to continued employment and not just a unilateral expectation of continued employment. Hill, 455 F.3d at 234. A legitimate entitlement to--and thus a property interest in--a government job is not created by the Constitution but rather by state law. Id.; see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 539 (1985). A public employee who can be discharged only for cause has a protected property interest in continued employment. Loudermill, 470 U.S. at 539. A public employee who can be suspended only for just cause has a protected property interest in not being suspended without just cause. Dee v. Borough of Dunmore, 549 F.3d 225, 231 (3d Cir. 2008).

In Loudermill, the Court determined "what pretermination process must be accorded a public employee who can be discharged only for cause." 470 U.S. at 535. Prior to evaluating what process was due, the Court found that the Plaintiffs had a property right in continued employment because the applicable Ohio statute classified them as civil service employees "entitled to retain their positions 'during good behavior and efficient service' who could not be dismissed 'except . . . for misfeasance, malfeasance, or nonfeasance in office.'" Id. at 538-39 (quoting Ohio Rev. Code Ann §§ 124.11, 124.34).

In weighing the interests at stake, the Court found that

12

depriving a person of his or her means of livelihood was severe. Id. at 543.  The Court reasoned that giving an employee the opportunity to present his or her side of the case prior to termination was "of obvious value in reaching an accurate decision" on whether to dismiss an employee for cause.  Id.  The Court further found that the Plaintiffs each had plausible arguments that may have prevented their discharge.  Id. at 544. The Court next determined that the governmental interest in immediate termination under the circumstances did not outweigh those private interests.  Id.  It reasoned that affording the employee an opportunity to respond prior to termination would not create a significant burden.  Loudermill, 470 U.S. at 544.  The Court further reasoned that a government employer also had an interest in avoiding disruption and erroneous decisions, continuing to receive the benefit of the trained employees' labors, and keeping citizens usefully employed rather than being placed erroneously on the welfare rolls.  Id.  The Court also stated that in situations where the employer perceived a significant hazard in keeping the employee on the job, it could avoid the problem by suspending the employee with pay.  Id. at 544-45.  Thus, the Court held that prior to termination a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

Id. at 545.

In Dee v. Borough of Dunmore, the Third Circuit examined whether a suspension, rather than a termination, entitled an employee to any procedural due process and, if so, what level of process was constitutionally due.  549 F.3d 225, 228-229, 232 (3d Cir. 2008).  In Dee, the Borough Manager determined that an Assistant Fire Chief had not completed two weeks of required training.  Id. at 227, 228.  Without further investigation, the Borough Council suspended Dee with pay pending a hearing to be held eight days later.  Id.  Prior to the suspension, Dee had no knowledge that his personnel file was under review and was unaware of any charges against him.  Id. at 228.  At the post-suspension hearing the Council determined that Dee had in fact completed all required training and then notified Dee that he would be permitted to return to work.  Id. at 228.  Dee brought suit under 42 § 1983 alleging violation of, *inter alia*, his Fourteenth Amendment right to procedural due process in regards to the suspension.  Id. at 227.  The District Court found that Dee's asserted property interest did not warrant constitutional protection and, therefore, granted the Defendants' Motion for Summary Judgment.  Dee v. Borough of Dunmore, 2007 U.S. Dist. LEXIS 21448, *12-13 (M.D. Pa. March 7, 2007).

On appeal, the Third Circuit first considered whether Dee had a protected property interest "in not being suspended without

just cause." Dee, 549 F.3d at 229.  The Court looked to the Pennsylvania Borough Code, which stated that "'[n]o person employed in any . . . fire force of any borough shall be suspended, removed or reduced in rank except for one of six enumerated reasons.'" Id. (quoting 53 Pa. Stat. § 46190).  It found that Dee, as an employee in a fire force of a borough, clearly had a property interest in not being suspended without just cause and was entitled to Fourteenth Amendment protection because the statute explicitly stated that it applies to those "suspended." Id. at 230.

The Court then went on to consider the level of process Dee was constitutionally due. Id. at 232.  It first noted that having no form of pre-deprivation process considerably heightens the second Mathews factor--the risk of an erroneous deprivation. Id. "Only in 'extraordinary situations where some valid government interest is at stake' is it permissible to postpone the hearing until after the deprivation has already occurred." Id. at 233 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)(internal quotation omitted)).  The Court then remanded the case back to the District Court to determine whether it was an extraordinary situation as the defendants claimed because they feared for the safety of their citizens or whether, as the Plaintiff claimed, the defendants merely feared for their own public image. Dee, 549 F.3d at 233.  The Court found that the

15

District Court had not reached this issue, nor had it sufficiently addressed Dee's property interest, and that these issues would greatly impact the Mathews v. Eldridge analysis. Dee, 549 F.3d at 233.

In the present case, the Plaintiff argues that he was deprived of procedural due process because the Defendants suspended his duties as Chief of Police without any presuspension notice or hearing, which he asserts was required under Loudermill.[6]   Defendants have moved for summary judgment on Plaintiff's procedural due process claim.  First, Defendants assert that Plaintiff did not have a protected property interest in his employment as Chief of Police because he was never properly certified by the civil service commission and thus was never given civil service protection or because Plaintiff retired.  Alternatively, Defendants argue that even if Plaintiff did have a protected property interest, Defendants did not violate his procedural due process rights because the Mathews

---

[6]   Plaintiff also refers in his complaint to being constructively or wrongfully discharged and thus de facto terminated on August 6, 2007 when the Borough Council suspended him.  A constructive discharge, however, requires an involuntary resignation of one's position and will be deemed as such under only two circumstances: "'(1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 232 n.10 (3d Cir. 2006)(quoting Leheny v. City of Pittsburgh, 183 F.3d 220, 228 (3d Cir. 1999)).  Plaintiff's suspension with pay on August 6, 2007, however, could not have been a constructive discharge because, as a threshold matter, there was no resignation or retirement.  Although Plaintiff in his lengthy Motions and Responses makes reference to his later resignation as a constructive discharge, he did not allege this in his complaint nor pursue this in his Motions.  Plaintiff based his Due Process claims on his suspension and not on his later resignation.

16

factors weigh in favor of the Defendants.[7]

Plaintiff asserts that he was properly certified by the civil service commission and that he did not effectively retire. He argues that his notice of intent to retire was conditional and that Defendants' purported acceptance of his retirement altered the conditions and was thus a counter offer and not an acceptance.  Therefore, he argues, he was free to rescind his notice of retirement, which he asserts he did on July 30, 2007, one day before his retirement was to go into effect.  Plaintiff also maintains that he was due a Loudermill notice prior to his suspension.  He has moved for partial summary judgment based on the assertion that Dee is dispositive on the issue of liability in his due process claims.

As an initial matter, Plaintiff's assertion that he is entitled to summary judgment based on Dee, is not persuasive. Dee stands for the proposition that a person who can only be suspended for cause has a property interest in not being suspended.  Dee, 549 F.3d at 231.  Dee went no further to determine the level of process due and certainly did not hold

---

[7] Defendants also argue in their Reply brief that Plaintiff failed to utilize the proper administrative procedures available to him prior to filing his Fourteenth Amendment due process claim in federal court and, as such, his claims are not yet ripe for adjudication.  Defendants did not assert this defense in their Motion for Summary Judgment and thus this argument and Plaintiff's reply thereto will not be fully addressed.  However, assuming, *arguendo*, that this ground was properly before the Court and that Plaintiff did exhaust his administrative remedies or was not required to, the Court would still grant Defendants' Motion for Summary Judgment because Plaintiff received the procedural process that he was due.

that a person is due a presuspension hearing or notice per se
regardless of the particular facts of the case.  It merely
remanded the case to the District Court to determine genuine
issues of material fact that were in dispute regarding the
motivation behind the suspension that could then properly be
considered in the <u>Mathews</u> analysis.  <u>Id.</u> at 233.  Furthermore,
<u>Loudermill</u> analyzed the level of the process due when terminating
a tenured employee and did not decide what process is due when
merely suspending an employee with pay.  <u>See</u> <u>Loudermill</u> 470 U.S.
at 543-46.  To the contrary, under the circumstances of that
case, the Court stated that due process concerns could be avoided
by suspending the employee with pay.  <u>Loudermill</u>, 470 U.S. at
544-45.  Moreover, in <u>Gilbert v. Homar</u>, the Supreme Court found
that <u>Loudermill</u> did not require notice and an opportunity to be
heard prior to suspending a tenured employee without pay in all
instances.  <u>Gilbert</u>, 520 U.S. at 930.  If <u>Loudermill</u> does not
mandate predeprivation process prior to a suspension without pay,
clearly it also does not mandate predeprivation process prior to
a suspension with pay.  Plaintiff's Motion for Summary Judgment
on his procedural due process property claim is, therefore,
denied.

Moving forth with the Defendants' Motion for Summary
Judgment the Court assumes, arguendo, that Plaintiff was covered
under 53 Pa. Stat. § 46190 as a civil servant and had effectively

18

rescinded his retirement.[8]  Thus, we determine whether Plaintiff
received the level of process he was due in relation to his
suspension.[9]  To make this determination, we must analyze the
competing interests present in this case as set forth in Mathews
v. Eldridge, 424 U.S. 319, 334 (1976).  Specifically, we must
consider (1) the private interests, (2) the risk of erroneous
deprivation and the value of additional procedures and (3) the
government interests.  Id.

First, although not being suspended without due cause is a
property interest entitled to protection under the Fourteenth
Amendment, the private interest at stake is minimal.  Contrary to
the circumstances in Loudermill where the employees were fired,
being suspended with pay does not result in the loss of a
person's livelihood and thus the deprivation is not nearly as
severe as it was in Loudermill.  Cf. Gilbert, 520 U.S. at 932
(finding private interest of tenured employee suspended without
pay was not significant where lost income was relatively
insubstantial and fringe benefits were unaffected).  Here, not

---

[8]  Because we find that Plaintiff received an adequate amount of due
process if he were entitled to any due process, we need not reach the
questions of whether he was a covered civil service employee or had
effectively rescinded his retirement.

[9]  53 Pa. Stat. § 46190 states in part that civil servants employed in
either the police or fire force can be "suspended, removed or reduced in rank"
for only six enumerated reasons and not for "religious, racial or political
reasons."

only was the Plaintiff still being paid while on suspension, he
had already contracted to begin work as the Chief of Police for
Kennett Township, a contract of which the Borough was aware, and
thus he already had another means of livelihood available to him.
Thus, Loudermill's additional concern that a fired worker may
have difficulty finding new employment is not present under the
facts of this case.  We find, therefore, that although the
Plaintiff had a property interest in not being suspended without
due cause, because he was suspended with pay his interest was
significantly less than had he been terminated or suspended
without pay.

The Plaintiff asserts that his private interests at stake
were his professional and personal reputation and his future
career in law enforcement.  Reputational injury, however, is a
separate cause of action and is addressed below in the discussion
of Plaintiff's claim for loss of his reputation and good name.
As discussed above, Plaintiff's interest in his future career in
law enforcement is also of little weight, especially considering
that he had secured another position as Chief of Police, which he
went to after his resignation with the Borough on September 21,
2007.

Second, as previously stated, the risk of an erroneous
deprivation of a constitutionally protected interest is clearly
heightened when there is no predeprivation process.  Dee, 549

20

F.3d at 232.   In <u>Dee</u>, however, the plaintiff had no knowledge
whatsoever that he was under review and the suspension caught him
completely by surprise.   <u>Id.</u> at 228.   Here, the Plaintiff and
Defendants had been in contact regarding Plaintiff's retirement
and his replacement by Chief Zunino for over a month.   Thus, the
risk of erroneous deprivation was not heightened as considerably
as it would be where a plaintiff has no prior knowledge of the
arising situation.   Moreover, contrary to the case of
termination, where "'the only meaningful opportunity to invoke
the discretion of the decisionmaker is likely to be before the
termination takes effect,'" suspension provides ample opportunity
during the suspension to invoke the decisionmaker's discretion.
<u>Gilbert</u>, 520 U.S. at 934-35 (quoting <u>Loudermill</u>, 470 U.S. at
543).

     Finally, we consider the government's interests.   The
Borough contends that its interests were the proper operation of
the police department and the protection of the citizenry, and
that an orderly transition and a clear message as to who is in
charge of the police department were vital.   The Court agrees
that these are substantial interests and that they outweigh
Plaintiff's interest under the facts of this case.   This is thus
one of those "extraordinary situations where some valid
government interest is at stake" sufficient to postpone any
notice or hearing until after the deprivation has already

occurred.  See Dee, 549 F.3d at 233 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)(internal quotation omitted)).

     Defendants submitted evidence that they suspended Plaintiff's duties as Chief of Police with pay in order to ascertain the status of his retirement from the Borough and his employment with the Township.  They notified Plaintiff in their letters dated August 6, 2007 and August 9, 2007 that he was going to continue to be paid and requested information as to whether he was or was not currently working full-time with the Township or had been working for them in the past.  Plaintiff chose not to respond to this request.  Although Plaintiff argues that the Defendants suspended him for reasons other than those stated, mere "speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Koltonuk, 443 F. Supp. 2d at 691 (internal quotation omitted); see also, e.g., Dee, 546 F.3d at 233 (reversing grant of summary judgment where plaintiff pointed to specific deposition testimony by defendant that suspension was out of concern for being "blasted by the press," rather than for the safety of the citizens).

     Even if we did not find this to be an "extraordinary situation," the government's interest in maintaining order within the Office of Chief of Police is valid and substantial, and significantly weightier than the Plaintiff's interest in not

being suspended with pay.  Thus, under the circumstances of this case, neither a Loudermill notice nor a presuspension hearing was required to satisfy due process.[10]  The communications between the Borough and the Plaintiff prior to and after the Council's suspension of the Plaintiff, including the letters of August 6, 2007 and August 9, 2007, informing the Plaintiff that he was being placed on leave because of his last minute change of plans and requesting information regarding his employment activities with Kennett Township, sufficiently apprised the Plaintiff of the situation and provided him opportunity to present his side of the story "at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (internal quotation omitted).

Thus, viewing the facts in the light most favorable to the non-moving party, *i.e.* the Plaintiff, we find that there is no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law on the Plaintiff's procedural due process property claim.  Under the circumstances of this case, Plaintiff was simply not constitutionally entitled to any more process than he received.

### b.  Loss of Reputation and Good Name

Defendants have also moved for summary judgment on

---

[10]  Additionally, Dee suggests that if the government defendant had a legitimate concern for the safety of its citizens, presuspension process would not be required.  See Dee, 546 F.3d at 233 (remanding to district court to resolve genuine issue of fact as to the government's motivation for suspending employee without notice or hearing).

Plaintiff's procedural due process claim for loss of reputation and good name.  To succeed on a due process claim for deprivation of a liberty interest in reputation, a Plaintiff must establish a stigma to his reputation plus a deprivation of an additional right or interest.  Dee v. Borough of Dunmore, 549 F.3d 225, 233-34 (3d Cir. 2008).  This is commonly referred to as the "stigma-plus" test.  See, e.g., id. at 234; Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006).  Reputation alone is not an interest protected by the Due Process Clause.  Dee, 549 F.3d at 233; Hill, 455 F.3d at 236.

In the public employment context, when an employer creates and disseminates a false and defamatory impression about the employee in connection with the employee's termination, Hill, 455 F.3d at 236, or suspension without due cause, Dee, 549 F.3d at 234, the employee is deprived of a protected liberty interest. Hill, 455 F.3d at 236.  The false and defamatory impression is the "stigma" and the termination or suspension without due cause is the "plus."  Hill, 455 F.3d at 236.  "When such a deprivation occurs, the employee is entitled to a name-clearing hearing." Id.

To establish the "stigma" prong of the test, the Plaintiff must establish that the alleged stigmatizing statements (1) were made publicly and (2) were false.  Id.  Defendants moved for summary judgment on this claim and assert first that no false

24

statements were made.  Plaintiff in his complaint asserts that the Defendants "damned him by innuendo in an attempt to destroy his good name and reputation." (Pl. Compl. ¶ 165).  He argues in his Motion for Partial Summary Judgment, incorporated into his Response to Defendants' Motion for Summary Judgment, that he was defamed because notice of his suspension was published on the internet as part of the minutes from the Borough Council Meeting and that his suspension was "pregnant with innuendo" and "damaged his reputation publicly."  The Plaintiff has not, however, submitted any evidence or provided any argument as to the falsity of this publication.[11]  To satisfy the "stigma" prong of the analysis, the statement must be false.  See Hill, 455 F.3d at 236 ("stigma" requires a public statement that is false).  A truthful statement that damages one's reputation simply does not trigger any constitutional concerns.  See id.

---

[11] The Court notes that the Plaintiff did submit an "opinion" by John V. Ryan, Esquire, a lawyer not party to this case, analyzing the Borough's conduct regarding the Plaintiff's suspension and making legal conclusions including, *inter alia*, that the Borough was required to conduct a Loudermill hearing before a public suspension of the Plaintiff if the borough had facts to support a disciplinary action against him.  The Court finds this report to be completely irrelevant, as it is the Court that is charged with making these determinations.  Additionally, the lawyer's mere opinion is not evidence and is entirely immaterial to this case.

Plaintiff also submitted an "expert report" by Chief William M. Hein of the City of Reading Police Department.  Chief Hein opines on, *inter alia*, the impact of Plaintiff's suspension on his future employment, the ramifications of Loudermill, and whether the Plaintiff should have been suspended or subject to any pre-disciplinary process.  Although the Court respects that Chief Hein is knowledgeable about the processes used by municipalities in choosing their Chiefs of Police, Chief Hein's opinion is not evidence as to the falsity of the alleged defamatory statement, nor is it in any way evidence as to the amount of procedural process that Chief McCarthy was due.  Again, it is the Court that is charged with interpreting the law and making legal determinations.

The Plaintiff also asserts that Defendants deprived him of his protected liberty interest in his good name and reputation by prohibiting him from holding a separate full-time position while he was employed full-time with the Borough.  It is unclear if the Plaintiff intends this prohibition to satisfy the "stigma" prong of the analysis or the "plus" prong of the analysis.  Regardless, as Defendants state in their Motion, the Plaintiff has still failed to provide any evidence of any false statement.

Thus, viewing the facts in the light most favorable to the Plaintiff, we find that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  Defendants' Motion for Summary Judgment is, therefore, granted as to all of Plaintiff's § 1983 claims.  Plaintiff's Motion for Partial Summary Judgment on his § 1983 claims is denied.

**B.   State Law Claims**

Plaintiff has also put forth several state law claims.  Having granted summary judgment to Defendants on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  See 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to all federal claims.  Plaintiff's Motion

26

for Partial Summary Judgment is DENIED.  As we decline to
exercise supplemental jurisdiction, all remaining state law
claims are DISMISSED with leave to Plaintiff to re-file them in
state court.  An appropriate order follows.